UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**YASMIN A. RIVERA,**                                    Chapter 7
    Debtor                                              Case No. 10-22978-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~
**WARREN AGIN, CHAPTER 7**
**TRUSTEE,**
    Plaintiff

v.                                                       Adv. P. No. 11-1164

**YASMIN A. RIVERA**,
    Defendant
~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the adversary complaint filed by the Chapter 7 Trustee, Warren Agin, against the Debtor, Yasmin A. Rivera (the "Debtor"), through which he seeks the denial of her discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (4)(A) as well as an award of costs pursuant to Fed. R. Bankr. P. 7054(b). The Court conducted a trial on April 11, 2012 at which the Debtor testified and fourteen exhibits were introduced into evidence.  At the conclusion of the trial, counsel to the Trustee withdrew Count I of the Complaint under 11 U.S.C. § 727 (a)(2)(B).  Prior to the trial, the parties submitted a Joint Pretrial Memorandum which included certain facts admitted by the Debtor.  That portion of the Joint Pretrial Memorandum was introduced into evidence.  The Court now makes

1

the following findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052.

## II. FACTS

The Debtor, a 54 year old woman, filed a voluntary Chapter 7 petition on November 30, 2010. She holds a bachelor of arts degree from the University of Puerto Rico. After working for a finance company for a short time during and following college, she began working for American Airlines as a flight attendant. She has worked in that position for twenty-five years.

On or about December 2, 2010, the Trustee requested by letter to Debtor's counsel that the Debtor provide him, prior to the § 341 meeting of creditors, with copies of her bank statements for the month covering the petition date. On December 23, 2010, the Debtor filed her Schedules and Statement of Financial Affairs. On Schedule A - Real Property, the Debtor listed a fee simple interest in her residence in Hanson, Massachusetts as well as a fee simple interest in a "Vacation Condo" located in Orlando, Florida (the "Florida property"). On Schedule B - Personal Property, the Debtor listed a checking account and a savings account both with Bank of America with balances of $500 and $750, respectively (the "BOA accounts"). On her Schedule C - Property Claimed as Exempt, the Debtor claimed $625 of the total held in the BOA accounts as exempt pursuant to Mass. Gen. Laws ch. 235, § 34(15) and ch. 246, § 28(a). She also claimed the Massachusetts homestead exemption on her residence pursuant to Mass. Gen. Laws ch. 188, § 1. On the same date she filed her Schedules, the Debtor also filed her Declaration Concerning Debtor's Schedules in which she declared under penalty of perjury that she had read her Schedules and that

2

they were true and correct to the best of her knowledge, information and belief.

On December 28, 2010, the Trustee conducted a meeting of creditors pursuant to 11 U.S.C. § 341(a) at which the Debtor appeared. A transcript of the meeting was submitted into evidence. The Debtor did not provide the Trustee with copies of the previously requested bank statements prior to the meeting. At the § 341 meeting, the Trustee asked the Debtor whether she had read her Petition, Schedules, Statement of Financial Affairs and the other documents her attorney prepared for filing with the Bankruptcy Court before she signed them. She replied "Yes, I did." When asked if those documents were complete and accurate, she replied "Yes." The Trustee later asked the Debtor "[w]hat kind of bank accounts do you have?" The Debtor replied that she had a "[s]avings, checking and a credit union account with American Airlines." During his questioning, the Trustee observed that the Debtor had not listed the credit union account in her Schedules, and Debtor's counsel responded that he needed to amend the Schedules, although he never did so. When asked about the balance in the credit union account as of the petition date, the Debtor testified that the balance was approximately $9,500 and that that sum still remained in the account. The Trustee cautioned the Debtor that, based upon the exemptions she had already claimed in the BOA accounts and the homestead exemption, she likely would not be able to exempt all of the credit union funds and would have to turn over the nonexempt balance to the Trustee. The Debtor replied: "No, that's why I didn't touch anything[,]" and added later "[i]t's much less than what I'm paying in [the Florida property]" which her counsel reported was in foreclosure.

The Trustee made repeated references at the meeting to the BOA accounts which had, according to the Debtor's Schedules, a balance of $1,250; the Debtor did not correct the Trustee's statements. At the conclusion of the meeting, the Trustee requested that the Debtor produce copies, within ten days, of her bank statements for all accounts from the period of August 30, 2010 through December 30, 2010. The Trustee, however, did not wait for the bank statements before acting. On January 6, 2011, he sent a turnover demand to American Airlines Credit Union for all of the funds in the Debtor's account. Less than a week later, on January 12, 2011, the credit union complied and sent the Trustee all funds in the account, $9,777.74, less $5 to maintain an open account.

On January 18, 2011, Debtor's counsel faxed bank statements to the Trustee which included statements for the credit union account covering the time period from September 11, 2010, through December 10, 2010. The statements reflect that the credit union account contained a balance of between $9,000 and $10,000 continuously during that period of time. On the petition date, the balance in that account was $9,804. Bank statements faxed by Debtor's counsel to the Trustee on February 7, 2011 confirmed a petition date balance in the BOA savings account of $4,887.93.[1] Pursuant to the Joint Pretrial Memorandum, the parties stipulated that the Debtor knew the BOA savings account had a petition date balance of approximately $4,000 on the petition date, the date she filed her schedules and on the date of the § 341 meeting. The parties also stipulate that as of the petition date, the

---

[1] With respect to the BOA accounts, this dispute involves the balance of the savings account only and not the checking account.

date she filed her Schedules and the date of the § 341 meeting, the balance of the BOA savings account as well as the existence and the balance of the credit union account were material facts.

On May 11, 2011, the Trustee filed the Complaint against the Debtor, alleging, *inter alia*, that she knowingly and fraudulently made a false oath or account or made a false oath or account in reckless disregard for the truth in connection with the credit union account and the correct balance of the BOA savings account. At trial, the Debtor defended the Trustee's Complaint on the basis that she did not intentionally omit specific reference to her credit union account or the correct balance of her BOA savings account, but rather did so inadvertently and unintentionally.

With respect to the credit union account, the Debtor testified at trial that she immediately disclosed its existence to the Trustee at the § 341 meeting when he inquired about bank accounts. She added that she truthfully testified at the § 341 meeting about the balance in the account and readily agreed to turn those funds over to the Trustee. Nevertheless, she testified at trial that when she learned that the funds in the credit union account had been turned over to the Trustee she felt as if " . . . somebody had just come into my house and just robbed me." The Debtor later sought to clarify this remark as a reaction to the Trustee's aggressive actions in seeking turnover directly from the credit union instead of waiting for the Debtor to remit the funds to him. She testified at trial that a number of factors contributed to the errors and omissions in her Schedules, namely, that she was a single mother facing foreclosure, working long hours as a flight attendant on international

5

flights during peak travel season, and that she was concerned about her ill father. These events, she testified, affected her state of mind and impaired her ability to collect her documentation and meet with bankruptcy counsel. Contrary to her testimony at the § 341 meeting, the Debtor testified at trial that she did not closely examine her Schedules before signing them, instead contending that "You know, I signed them and assumed they were correct."

At the time she signed her Schedules, the Debtor testified, she knew she had the credit union account with a balance of over $9,000 and that the BOA savings account had a balance of approximately $4,000. She said that she planned to use the funds in excess of the reported $750 balance in the BOA savings account to help pay nursing home expenses for her ailing father. She also testified at a deposition on November 30, 2011, a transcript of which she submitted into evidence, that she had "earmarked" approximately $3,000 in the BOA savings account for that purpose. She ultimately did not use that money for a nursing home because one of her siblings took over her father's care. On the date she executed the Schedules she had paid no money to a nursing home. Nonetheless, she listed the BOA savings account balance in her Schedules with the "expectation" that she would have to make such a payment. In other words, she underreported the value of the account in case she needed to pay an expense that had not yet and never did materialize. At trial, she claimed, although her testimony was vague, that she intended to change her schedules at some point to the correct balance but never looked at them again. Her deposition testimony was much the same: " . . . and I wrote it all in pencil. I know that for a fact

because I was going to go back to things and in between all this collection of all this data, obviously I didn't go back to it." When asked at her deposition whether she had provided copies of credit union bank statements to her attorney prior to filing her bankruptcy petition, she replied that she could not recall for sure. Both at her deposition and at trial she attributed her failure to list the account to the various stresses she was undergoing. She also testified at trial that she planned to use the credit union funds to pay the mortgage on the Florida property, although she gave no information on when she abandoned that plan.[2]

### III. POSITIONS OF THE PARTIES

The Trustee maintains that the Debtor failed to accurately list the accounts because she had plans for the funds other than turning them over to the Trustee. Her actions, the Trustee claims, are tantamount to a reckless disregard for the accuracy of the information she attested to under oath. The Debtor contests the Trustee's assertion that she had "other plans" for the funds and contends that she did not knowingly or fraudulently make a false oath or account or show any kind of reckless disregard for the truth. Rather, she maintains, her actions were negligent and the result of various stresses occurring in her life. Moreover, her counsel asserted during his closing argument that the estate has been made whole as the Trustee has received the funds from both the BOA and credit union accounts.

### IV. DISCUSSION

---

[2] On August 23, 2011, the Court granted Federal National Mortgage Association's Motion for Relief from the Automatic Stay permitting it to pursue its rights under its mortgage on the Florida property. The Debtor did not oppose the motion, and the Trustee had previously filed a Notice of Intent to Abandon with respect to that property on August 8, 2011.

Section 727(a) of the Bankruptcy Code provides for the grant of a debtor's discharge. *See* 11 U.S.C. § 727(a). Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account. . . ." 11 U.S.C. § 727(a)(4)(A). For the reasons set forth below, the Court finds that the Trustee is entitled to judgment on Count II of his Complaint pursuant to 11 U.S.C. § 727(a)(4)(A) relating to the Debtor's false oaths on her schedules and at the § 341 meeting.

The United States Court of Appeals for the First Circuit in Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987) has summarized the law applicable to complaints under § 727(a)(4)(A). It stated:

> Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact. The burden of proof rests with the trustee, In re Shebel, 54 B.R. 199, 202 (Bankr. D. Vt.1985), but "once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." Matter of Mascolo, 505 F.2d 274, 276 (1st Cir.1974).

818 F.2d at 110. "The objecting party must prove each element of its objection to a discharge by a preponderance of the evidence." Xerox Fin. Servs. Life Ins. Co. v. Sterman (In re Sterman), 244 B.R. 499, 504 (D. Mass. 1999).

The First Circuit Bankruptcy Appellate Panel in Harrington v. Donahue, (In re Donahue), BAP No. NH 11-026, 2011 WL 6737074 (B.A.P. 1st Cir. Dec. 20, 2011), had occasion to address the elements of § 727(a)(4)(A) in a case where the debtors omitted assets in their schedules and testified at their § 341 meeting with a "striking lack of candor." With

8

respect to the element of "false oath" under § 727(a)(4)(A), the Panel observed that "'[a] debtor's Schedules and Statement of Financial Affairs are the equivalent of a verification under oath.'" Id. at 11 (quoting Perry v. Warner (In re Warner), 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000)), and that "[m]isstatements in a debtor's Schedules and/or in the debtor's sworn testimony at the § 341 meeting also qualify as false oaths within the purview of § 727(a)(4)(A)." Id. (citing Malicki v. Bernstein (In re Bernstein), 447 B.R. 684, 702 (Bankr.D.Conn.2011)). With respect to the requirement that misstatements be made knowingly and fraudulently, the Panel noted that a ". . . false statement is knowingly and fraudulently made if the debtor 'knows the truth and nonetheless willfully and intentionally swears to what is false.'" Id. at 12 (quoting Lussier v. Sullivan (In re Sullivan), 455 B.R. 829, 837 (B.A.P. 1st Cir. 2011)). As further explicated by the First Circuit Court of Appeals in Tully, "'reckless indifference to the truth' . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).'" In re Tully, 818 F.2d at 112 (footnote omitted). Lastly, the Panel in Donahue addressed the element of "materiality" and held that "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" Donahue, 2011 WL 6737074, at *12 (quoting In re Tully, 818 F.2d at 111).

In this case, there can be no dispute that the Debtor made a false oath when she executed her Schedules which contained no reference to the credit union account and provided that the BOA savings account had a balance of only $750, instead of approximately

9

$4,900. The Court need look no further than the parties' Joint Pretrial Memorandum in which the Debtor admitted that she knew on the petition date, on the date she filed her Schedules, and on the date of the § 341 meeting that she had a credit union account with a balance of about $9,000 and a BOA savings account with a balance of approximately $4,000.

The Debtor's § 341 testimony also raises the specter of false oath and account. She testified at the § 341 meeting that she had read her schedules before signing them and that they were complete and accurate. Later, at trial, she testified that she did not closely review the Schedules before signing them and merely assumed they were correct. Moreover, she testified at trial that she prepared her Schedules to reflect the balance of her BOA savings account after the payment of an expense she had not incurred. In short, the Debtor's trial testimony belies her § 341 meeting testimony.

The Court has no doubt that the Debtor was living under the extraordinary pressures she described at trial which may have affected her ability to accurately and timely compile and review her expenses and schedules. That testimony, however, is simply inconsistent with her unequivocal § 341 meeting statements that she had read the Schedules prior to signing them and that they were complete and accurate. While the Debtor did disclose the existence and approximate balance of the credit union account at the § 341 meeting, she did so only after the Trustee specifically asked her about all bank accounts. Her failure to amend her schedules and her testimony about feeling "robbed" when she learned that the credit union turned over the funds to the Trustee does not support a sympathetic

10

interpretation of her belated disclosure of the account at the § 341 meeting.

The Court turns next to whether the Debtor made the false oath and account knowingly and fraudulently. The Court again looks to the Joint Pretrial Memorandum in which the Debtor admitted that she knew of the existence of the credit union account and the balance of the BOA savings account when she omitted and undervalued those accounts on her Schedules. Additionally, the Court finds that the Debtor's trial testimony establishes that she willfully and intentionally swore to what she knew was false both on her Schedules and at the § 341 meeting. The Debtor's fraudulent intent is especially apparent with respect to her submission of Schedules which reflected a BOA savings account balance net of an expense she had not incurred. While she may have earmarked some of the funds in that account to pay a nursing home prior to filing her Schedules, she certainly knew by the time of the § 341 meeting that she had not used any funds for that purpose, and yet she remained silent when the Trustee made references to the understated balance of the account at the meeting. At a minimum, the Debtor's acts and omission establish a "reckless indifference to the truth" which has "consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." In re Tully, 818 F.2d at 112.

While Debtor's counsel maintains that the estate has been made whole in this matter, the materiality of the existence of the credit union account and the balance of the BOA savings account cannot be disputed as the parties agreed that those are material facts in the Joint Pretrial Memorandum. Notwithstanding the stipulated facts, "[c]ourts have acknowledged that the threshold to materiality is fairly low." Lussier v. Sullivan (In re

11

Sullivan), 455 B.R. 829, 839 (B.A.P. 1st Cir. 2011)(internal quotation and citation omitted), and the monies in those accounts are material nonexempt assets in this case. Again, in the words of Tully, "[s]worn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming." 818 F.2d at 112.

For all of the above reasons, the Court finds that the Trustee has sustained his burden of establishing that the Debtor knowingly and fraudulently made false oaths and accounts in connection with this case relating to material facts. The burden then shifted to the Debtor to produce evidence that she did not make knowing and fraudulent false oaths. The Court finds that the Debtor failed to produce such evidence.

**V. CONCLUSION**

In view of the foregoing, the Court shall enter judgment in favor of the Trustee and against the Debtor on Count II of the Trustee's Complaint. The Trustee withdrew Count I of the Complaint at the conclusion of the trial. Moreover, the Court need not consider that count in light of its finding with respect to Count II. Count III of the Complaint is a request for the award of costs. In light of the fact that this is an asset case, the Court shall enter judgment in favor of the Debtor on Count III without prejudice to the Trustee's ability to

seek reimbursement of such costs in his application for compensation as Chapter 7 Trustee or as counsel to the Trustee in the Debtor's bankruptcy case. A separate order shall enter.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:   June 22, 2012